United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPECTROS CORP.<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>THERMO FISHER SCIENTIFIC, INC.<br><br>　　　　　Defendant.<br>_____/ | No. C-09-01996 SBA (NJV)<br><br>**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR DECLARATION OF EXCEPTIONAL CASE AND AWARD OF ATTORNEY FEES AND EXPENSES**<br>**(Doc. No. 103)** |

## INTRODUCTION

The district court granted defendant Thermo Fisher Scientific's ("TFS") motion for summary judgment on May 31, 2012. Doc. No. 100. TFS subsequently filed a motion for declaration of exceptional case and award of attorneys fees and expenses pursuant to 35 U.S.C. § 285, which the district court referred to the undersigned for a report and recommendation. Doc. Nos. 103, 105. The motion was fully briefed and was heard on August 28, 2012. For the reasons stated below, the undersigned will recommend that the district court grant TFS' motion in part, declare this case became exceptional when Spectros refused to dismiss the action after the claims construction hearing, and award the attorneys fees and expenses that TFS incurred after December 19, 2011.

## BACKGROUND

Plaintiff Spectros Corp. ("Spectros") filed a patent infringement lawsuit against TFS in May 2009. Spectros originally claimed that TFS' NanoDrop 3300 spectrometer (the "NanoDrop") infringed Claims 1-4 of one of Spectros' patents (the "'426 Patent"). Doc. No. 1. TFS filed a request for reexamination with the Patent and Trademark Office. On April 19, 2011, the PTO issued a reexamination certificate cancelling Claims 1-10 and 24-32 of the '426 Patent, but confirming the

validity of Claims 11-23. Doc. No. 62-2. The four claims implicated in Spectros' lawsuit thus were cancelled.

Instead of dismissing the action, Spectros moved for leave to amend its complaint to allege that TFS infringed Claim 19 of the '426 Patent. TFS opposed the motion on the ground that any amendment would be futile because the NanoDrop did not have "a light collection fiber integrated into said illuminator," as specified by Claim 19. Doc. No. 58 at 1-2. In response, Spectros argued:

> Thermo is simply wrong that no facts could bring the accused device within the scope of claim 19 even where the fiber optic cable of the NanoDrop 3300 is not integrated into the white LED light source. A proper construction of claim 19 would not require a fiber optic cable integrated into the white LED light source. Rather, claim 19 merely requires a collection fiber integrated into the illuminator. *Accordingly, the Court's construction of the term "illuminator" will determine whether the NanoDrop 3300 has a collection fiber integrated into the illuminator.* Consequently, a set of facts does exist where the NanoDrop meets each limitation of claim 19.

Doc. No. 59 at 2-3 (emphasis added). Finding it more appropriate to determine futility on a motion to dismiss than on a motion for leave to amend, the district court granted leave to amend and the case proceeded. Doc. No. 61.

On December 7, 2011, the district court held a claims construction hearing. Doc. No. 110-1. Plaintiff acknowledged that the "heart of the parties' dispute" was whether the "illuminator" was the entire device, or only "that portion of a device . . . that generates broadband light." *Id*. at 6. The district court initially agreed with Spectros that the term "illuminator" did not need to be construed, and that if it did need to be construed, it should be construed as "a device that generates broadband light to a target region or sample." Doc. No. 110-1 at 5. After extensive oral argument, however, the district court construed the claim in the manner TFS advocated, as "that portion of a device that generates broadband light and delivers that light to a target region or sample." Doc. No. 76 (December 8, 2011 Claim Construction Order); *see also* Doc. No. 110-1 (Transcript from December 7, 2011 Claim Construction Hearing) at 17-69 (parties arguing whether "illuminator" needs to be construed; court determining it does), at 81 ("the term 'illuminator' is construed in the fashion that TFS" advocated at the beginning of the *Markman* hearing). To infringe Claim 19, the NanoDrop thus would need to have a "light collection fiber" integrated into "that portion of a device that generates broadband light and delivers that light to a target region or sample." Doc. No. 76.

2

1  TFS contended – based on the district court's construction of Claim 19 – that the NanoDrop
2  did not have a light collection fiber integrated into the illuminator, and thus did not infringe
3  Spectros' patent. On December 19, 2011, TFS accordingly requested that Spectros dismiss the
4  action. Doc. No. 103-1, ¶ 7. Spectros refused. *Id*. TFS also unsuccessfully sought to limit
5  discovery to the issue of non-infringement until the motion for summary judgment was decided.
6  Doc. No. 77 at 3-4.

7  Almost six months of discovery and motion practice later, the district court granted TFS'
8  motion for summary judgment of non-infringement. The district court held that the NanoDrop did
9  not literally infringe Claim 19 of the '426 patent:

> [U]nder this Court's construction of the term "illuminator," the NanoDrop's "illuminator" is that portion of the NanoDrop that incorporates the LEDs and the spill-protective window and the free space between the LEDs and the target, through which light must pass before reaching the target to which it is delivered.
>
> Given the structure of the NanoDrop, which is not disputed by Spectros, it is clear that the NanoDrop does not have a "light collection fiber" that is "integrated into said illuminator"–as specified in the '426 patent.

15 Doc. No. 100 at 8 (May 31, 2012 Order). The district court's order relied on the declaration of TFS'
16 expert, Dr. Hirsch. *Id*. ("Dr. Hirsch's un-refuted testimony and the drawings below illustrate [that]
17 the light collection fiber is not integrated into any portion of the instrument that generates light or
18 delivers it to the sample"). Spectros did not offer expert testimony to oppose TFS' motion for
19 summary judgment, whether to refute Dr. Hirsch's testimony or make affirmative points that would
20 defeat TFS' motion. Instead, Spectros advanced arguments that the district court concluded "fail[ed]
21 on multiple levels" because they relied on the "overly-broad and untenable interpretation of
22 illuminator" that the district court had rejected in its December 8, 2011 claims construction order.
23 *Id*. at 9. The district court concluded that Spectros' "interpretation [was] unsupported and [was]
24 contrary to the Court's construction of the term 'illuminator.'" *Id*. at 10.

25  The district court further held that Spectros was procedurally barred from asserting
26 infringement under the doctrine of equivalents. Spectros had represented in its contentions that it
27 was only alleging a claim for literal infringement and Spectros never amended its contentions to
28 include a claim based on the doctrine of equivalents. Doc. No. 100 at 10-11. The district court

3

concluded that a claim under the doctrine of equivalents nonetheless would fail on the merits because, regardless of how "similar" the accused device was to the '426 patent, the optic cable of the NanoDrop was not integrated into the illuminator, and thus the NanoDrop did not infringe the '426 patent under the doctrine of equivalents. *Id*.

Spectros appealed the district court's order granting summary judgment. Doc. No. 112. At the August 28, 2012 hearing, the undersigned asked the parties whether it would be appropriate to wait for the Ninth Circuit decision on Spectros' appeal before deciding TFS' motion for attorneys fees. Both parties expressed their preference for proceeding with the motion for attorneys fees at this time.

## ANALYSIS

### A. Legal Standards For Awarding Fees Under 35 U.S.C. § 285.

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. Determining whether a case is exceptional and eligible for an award of attorney fees is a two-step process: "First, the district court must determine whether a case is exceptional, [which is] a factual determination . . . . After determining that a case is exceptional, the district court must determine whether attorney fees are appropriate . . . ." *Wedgetail Ltd. v. Huddleston Deluxe, Inc.*, 576 F.3d 1302, 1304 (Fed. Cir. 2009). The prevailing party must establish the exceptional nature of the case by clear and convincing evidence. *Id*.

Although declaring a case "exceptional" is within the district court's discretion, the discretion is not "unbridled." *Wedgetail*, 576 F.3d at 1304. "A case may be deemed exceptional under section 285 where there has been willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates [FRCP] 11, or like infractions." *MarcTec, LLC v. Johnson & Johnson and Cordis Corp.*, 664 F.3d 907, 916 (Fed. Cir. 2012). For example, "[t]he filing and maintaining of an infringement suit which the patentee knows, or on reasonable investigation should know, is baseless constitutes grounds for declaring a case exceptional" under section 285. *Eltech Systems Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 810 (Fed. Cir. 1990) (internal quotations omitted); *see also MarcTec*, 664 F.3d at

1  916 ("Where a patentee prolongs litigation in bad faith, an exceptional finding may be warranted")
2  (internal quotations omitted). TFS contends that Spectros committed litigation misconduct when it
3  amended the complaint and again when it refused to dismiss the action after the *Markman* ruling.
4      Even if a court finds a case is exceptional, it nonetheless has discretion whether to award
5  attorney fees, and "must weigh factors such as degree of culpability, closeness of the questions, and
6  litigation behavior." *Nilssen v. Osram Sylvania, Inc.*, 528 F.3d 1352, 1359 (Fed. Cir. 2008). "Pre-
7  filing investigation and discussions with the defendant" are also relevant where the alleged infringer
8  seeks fees after prevailing in the lawsuit. *MarcTec,* 664 F.3d at 916.

**B.   Discussion.**

   **1.   Spectros engaged in litigation misconduct by continuing to prosecute the action after the district court construed the term "illuminator" in a manner that defeated any claim of infringement.**

12      TFS argues that Spectros engaged in litigation misconduct when Spectros chose to amend its
13  complaint rather than dismiss the action after the PTO reexamined Spectros' patent and invalidated
14  its claims. TFS also contends that Spectros engaged in even more egregious litigation misconduct
15  when it chose to proceed with the action after the district court constructed the term "illuminator" in
16  a manner that defeated any claim of infringement. *See* Doc. No. 103 at 10-11.

17      TFS has not established by clear and convincing evidence that Spectros engaged in litigation
18  misconduct by amending its complaint. TFS bears the burden of establishing that Spectros
19  "persisted in advancing unfounded arguments that unnecessarily extended this litigation and caused
20  [TFS] to incur needless litigation expenses." Doc. No. 103 at 11 (quoting *MarcTec*, 664 F.3d at
21  920-21). First, TFS has provided no evidence that Spectros knew or should have known its
22  arguments were "unfounded" when it amended the complaint. Second, although TFS argues that
23  Spectros should have known from the beginning of the litigation that the term "illuminator" would
24  be construed in a manner that would defeat its claims, the record suggests otherwise. At the
25  beginning of the *Markman* hearing, the district court expressed the opinion that Spectros had the
26  better argument and actually was inclined to agree that the term "illuminator" did not need to be
27  construed, but that if it was construed, it should be construed in the manner advocated by Spectros.
28  The transcript of the oral argument establishes that the parties argued their position to the district court

vigorously, and that the district court posed numerous questions before eventually concluding that TFS' proposed construction was correct. Although the district court ultimately construed "illuminator" in a manner that defeated Spectros' infringement claim, TFS has not shown by "clear and convincing evidence" that Spectros knew its claims were baseless when it filed the FAC.

TFS, however, has met its burden of showing that the case became exceptional when Spectros refused to dismiss the action after the district court construed the term "illuminator." Spectros argues that it merely advanced a good faith argument that the "illuminator included the LEDs as well as the mount/platform that housed the end of the fiber optic cable. Ultimately, the Court disagreed and granted TFS' motion for summary judgment" in May 2012. Doc. No. 107 at 6. Even after receiving the claims construction ruling, Spectros contends it believed that the term "illuminator" could "include the fiber optic cable seated in the pedestal" and was not "limited to the LEDs in the illumination block." *Id*. at 12. While Spectros may have made the argument in good faith up until the *Markman* hearing, the district court squarely rejected the argument when it construed "illuminator" only as "that portion of a device that generates broadband light and delivers that light to a target region or sample." Doc. No. 76 (December 8, 2011 Order). Spectros failed to explain to the district court on summary judgment or to the undersigned on this motion how the mount/platform "generates broadband light and delivers that light to a target region or sample" such that it could be construed as an "illuminator" under the district court's construction of the term.

The undersigned finds that the most compelling argument against Spectros is its failure to oppose TFS' motion for summary judgment with any expert declaration. In support of its motion for summary judgment, TFS offered an expert declaration stating that the light collection fiber in the NanoDrop was not integrated into any portion of the instrument that generates light or delivers light to the sample. Doc. No. 100 at 8. Spectros did not offer any expert testimony either to defeat the testimony of TFS' expert or to prove an affirmative point on summary judgment. Spectros thus could not hope to create a triable issue of fact to survive TFS' motion for summary judgment. Without an expert of its own, Spectros could not prevail on summary judgment. This supports TFS' argument that Spectros prolonged the litigation in bad faith after receiving the claims construction ruling.

The undersigned agrees with TFS that "no reasonable litigant could realistically have

6

1  expected to avoid summary judgment after the court had construed the claims." Doc. No. 110 at 6.
2  Based on the papers filed and the arguments of the parties, the undersigned concludes that there are
3  no mitigating factors that would preclude the imposition of attorneys fees after this time. The
4  undersigned thus will recommend that the district court award to TFS those reasonable attorneys
5  fees and costs it incurred in defending the action after it asked Spectros to dismiss the case on
6  December 19, 2011.

**2.  The majority of TFS' requested fees and costs are reasonable.**

Section 285 authorizes the recovery of all "sums that the prevailing party incur[red] in the preparation of and performance of legal services related to the suit." *Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983). TFS requests its attorneys fees. Doc. No. 103-4 & 103-5; 114-1 & 114-2. TFS also requests the costs of conference call and phone charges, electronic research services, photocopying, supplies, and costs associated with overnight travel, and itemizes each item claimed. Doc. No. 103-3. Spectros did not object to any of the costs claimed or to the attorneys' rates or time billed, but did object to expert fees that TFS has not, in fact, claimed. *Compare* Doc. No. 107 at 13-14, *with* Doc. No. 103-1.

Between December 20, 2011 and May 31, 2012, TFS incurred $76,294 in attorneys fees, $4,792 in non-attorney legal fees, and $1,072 in expenses. Doc. No 103-1 ¶ 19 & Exs. 2-4 (although TFS' Time & Expense Reports list entries through June 12, 2012, the undersigned notes that these later entries were not included in the amounts calculated above). TFS provided sufficient evidence of the fees and costs it incurred during this phase of the litigation. *See* Doc. Nos. 103-1, 103-3, 103-4, 103-5. As noted above, Spectros did not object to any of the fees or costs that TFS identified. Pursuant to the undersigned's request, TFS also submitted a supplemental declaration documenting the fees and expenses it incurred after May 31, 2012. Doc. No. 114. Although TFS represented in its opening brief that it did not expect these additional fees and costs to exceed $15,000 (Doc. No. 103-1, ¶ 20), TFS' supplemental declaration seeks an additional $35,000 in fees and costs (Doc. No. 114, ¶ 9). This amount includes approximately $6,000 incurred when counsel traveled from Portland, Maine, to Eureka, California for the hearing on this motion, more than $1,000 of the fees relate to "logistics" and "preparations" for this trip, and more than $1,000 of the costs relate to this

trip. (Some of the travel-related entries include working time, but TFS did not separately list these amounts.) Because the undersigned is aware of the time and costs involved in traveling to Eureka, he permits parties to appear at hearings by phone or video-conference. While TFS may believe that these fees and costs were fully justified, these fees and costs were avoidable. Given this, and given that TFS' requested fees and costs for this last portion of the case are more than twice the amount TFS originally estimated, the undersigned will not recommend that the district court award TFS the full fees and costs it requested in connection with the post-May 31, 2012 period. Subtracting those time entries (8/10/12, 8/17/12, 8/27/12, 8/28/12, 8/29/12) and costs (8/10/12 and thereafter) that appear principally related to the expense of traveling to Eureka, the undersigned will recommend that the district court award TFS $21,682 in fees and $5,626.23 in costs for the post-May 31, 2012 period.

**RECOMMENDATION**

Based on the foregoing reasons, the undersigned recommends that the district court grant TFS' motion to declare this an exceptional case after December 19, 2011, and award TFS: (1) $82,158 in fees and costs that TFS incurred between December 20, 2011 and May 31, 2012; (2) $21,682 in fees that TFS incurred after May 31, 2012; and (3) $5,626.23 in costs that TFS incurred after May 31, 2012. In total, the undersigned recommends that the district court award TFS $109,466.23 in fees and costs.

Any party may file objections to this report and recommendation with the district court within fourteen (14) days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) & (C); Fed. R. Civ. Proc. 72(b); Civil L.R. 72-3. Failure to file objections within the specified time may waive the right to appeal the district court's order.

Dated: September 17, 2012

Nandor J. Vadas
United States Magistrate Judge

8